UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GYM LAUNCH SECRETS LLC,<br><br>                    Plaintiff,<br><br>-against-<br><br>TATE NORRIS,<br><br>                    Defendant. | Civ. Action No.<br><br>**COMPLAINT** |

Plaintiff Gym Launch Secrets LLC, by its attorneys Gulko Schwed LLP and Bundy Law Firm PLLC, allege the following as its complaint against Defendant Tate Norris.

## NATURE OF THE ACTION

1. This action arises from a former sales agent misappropriating proprietary information to directly compete with his former employer, in violation of a restrictive covenant contained his employment agreement. As a result, the former employer now commences this action, sounding in misappropriation of trade secrets, copyright infringement, and breach of contract.

## PARTIES

2. Plaintiff Gym Launch Secrets LLC ("GLS") is a limited liability company organized and existing under the laws of the State of Wyoming, with a principal office in the State of California. None of the principals of Gym Launch resides in Washington.

3. Upon information and belief, defendant Tate Norris ("Norris") is an individual residing in Whatcom County, Washington.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000.

5.      Gym Launch asserts claims under the Copyright Act, 17 U.S.C. § 501 *et seq.*; thus, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over Gym Launch's related state law claims, pursuant to 28 U.S.C. § 1367.

6.      Gym Launch asserts claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836; thus, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Gym Launch's related state law claims, pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Norris because he resides in Washington.

8.      Venue is proper pursuant to § 28 U.S.C. § 1391 because Norris resides in this district.

## STATEMENT OF FACTS

### A. Gym Launch's Business Model

9.      GLS provides marketing and consulting services to gyms and fitness-related businesses. Through seminars, promotional materials, videos, and sales templates, among other tools, GLS teaches gym owners unique marketing and organizational techniques ("GLS Methods") to help them vastly expand their clientele in a short period of time.

10.     GLS has created promotional materials, templates, and access to proprietary digital files, all designed to effectively teach the GLS Methods ("Copyrighted Materials"), which each of which is copyrightable subject matter and wholly original to GLS. On November 17, 2017, GLS applied to the U.S. Copyright Office register the Copyrighted Materials.

11.     GLS has spent considerable resources developing the GLS Methods and Copyrighted Materials, which gives it a material advantage over its competitors. Thus, GLS's business model depends in large part on protecting their proprietary nature.

12.     To effectively service gyms across the country, GLS employs a sales team to work directly with its clients. Sales agents visit client gyms to train their owners in the GLS Methods.

13.     To maintain its competitive advantage, in light of both the resources it expends in training its sales force and the proprietary nature of the GLS Methods, GLS includes provisions in its contracts with all sales agents requiring them, upon termination, to return copies of all Copyrighted Materials and not to compete with GLS for a period of three years.

**B. Employment of Norris**

14.     On January 12, 2017, GLS hired Norris as a sales agent pursuant to a certain employment agreement (the "Agreement"). As a sales agent, Norris would have access to valuable proprietary information and extensive training in how to train clients using that information. Thus, Norris agreed, upon termination of the Agreement, to return all confidential information (including the Copyrighted Materials and GLS Trade Secrets) and not to compete with GLS for a period of three years thereafter.

15.     On January 13, 2017, GLS began training Norris to serve on its sales team. As a member of GLS's sales team, Norris had complete access to documents, computer files, and online accounts related to the GLS Methods; GLS's databases of clients and potential clients; and GLS's spreadsheets containing financial information and pricing margins.

16.     Norris's responsibilities included contacting prospective clients, traveling to client locations, introducing clients to the GLS Methods, consulting with clients regarding best practices, and being available to answer questions.

**C. Norris's Departure and Termination**

17.     In or about February 2017, Norris was at a client location in California when he informed GLS that he unexpectedly had to return home for personal reasons. He later informed GLS that another business of his was failing and, as a result, he would not be able to satisfy his obligations to GLS.

18.     Shortly thereafter, Norris ceased all communication with GLS. Although the Agreement requires thirty days' notice for termination, GLS was prepared to waive this requirement and considered Norris's employment to be duly terminated.

**D.  Norris's Use of Proprietary Information to Wrongfully Compete With GLS**

19.     In or about October 2017, GLS learned that Norris was selling the GLS Methods to gym owners and doing so using the Copyrighted Materials, GLS's database of clients and prospective clients, and GLS's financial and pricing information.

20.     For example, GLS learned that Norris marketed himself to gym owners by saying that he offered the same services as GLS for half the price.

21.     Upon information and belief, Norris was using the Copyrighted Materials, word-for-word and image-for-image, to directly compete with GLS.

22.     Upon information and belief, as a direct and proximate result of the above conduct, Norris successfully induced several GLS clients to cease doing business with GLS and buy the same or similar services directly from him instead.

## CLAIMS FOR RELIEF

### COUNT ONE: COPYRIGHT INFRINGEMENT (17 U.S.C. § 501, et seq.)

23.     GLS repeats each allegation in the preceding paragraphs as if set forth in full herein.

24.     GLS is the owner of the Copyrighted Materials.

25.     GLS has applied to the United States Copyright Office to register the Copyrighted Materials.

26.     Norris had access to the Copyrighted Materials in his capacity as a sales agent for GLS.

27.     Norris was aware that GLS created, and owned all rights to, the Copyrighted Materials.

28. Upon information and belief, after terminating his employment with GLS, Norris copied, used, and distributed the Copyrighted Materials for his own pecuniary interest, all in violation of GLS's rights.

29. As a direct and proximate result of Norris's conduct, GLS suffered damages in an amount to be determined at trial. Additionally, GLS has incurred, and will continue to incur, liability for costs and attorney's fees.

30. Upon information and belief, Norris's acts were in conscious and willful disregard of GLS's rights.

31. Norris's conduct has caused, and continues to cause, GLS irreparable harm that cannot be fully redressed through damages alone.

32. GLS has no adequate remedy at law.

33. In light of the foregoing, GLS is entitled to an order permanently and preliminarily enjoining Norris from using, copying, and distributing the Copyrighted Materials, and an award of monetary damages in an amount to be determined at trial

### COUNT TWO: MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836)

34. GLS repeats each allegation in the preceding paragraphs as if set forth in full herein.

35. The GLS Methods; related documents, computer files, and online accounts used to market, sell, and teach the GLS Methods; GLS's databases of clients and potential clients; and GLS's spreadsheets containing financial information and pricing margins ("GLS Trade Secrets") are each information from which GLS derives independent economic value by it not being generally known to, or legitimately readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

36. GLS makes efforts that are reasonable under the circumstances to maintain the secrecy of the GLS Trade Secrets.

37. Therefore, the GLS Trade Secrets constitute trade secrets pursuant to 18 U.S.C. § 1836.

38. In his capacity as a sales agent, Norris had extensive training in, and complete access to, the GLS Trade Secrets.

39. GLS services gyms throughout the United States; thus, the GLS Trade Secrets are used in, and intended for use in, interstate commerce.

40. Norris was prohibited from misappropriating the GLS Trade Secrets pursuant to 18 U.S.C. § 1836(b)(1).

41. Upon information and belief, Norris misappropriated the GLS Trade Secrets by offering to sell the GLS Methods and actually selling the GLS Methods, to both current and prospective clients of GLS.

42. Upon information and belief, Norris misappropriated the GLS Trade Secrets by using proprietary information about GLS's pricing and profit margins to undersell GLS and thereby induce GLS clients to purchase services from him instead of GLS.

43. Upon information and belief, Norris misappropriated the GLS Trade Secrets by using GLS's databases of clients and potential clients to specifically target GLS clients that were more likely to purchase services from him instead of GLS.

44. Upon information and belief, Norris's misappropriation of the GLS Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

45. As a direct and proximate result of Norris's conduct, GLS has suffered irreparable injury and significant damages, in an amount to be proven at trial.

46. As a direct and proximate result of Norris's actual misappropriation of the GLS Trade Secrets, GLS is threatened with additional and ongoing injuries, including the further loss of clients, goodwill, and income in amounts that may be impossible to determine unless Norris is enjoined and restrained by an order of this Court.

47. GLS has no adequate remedy at law.

48. In light of the foregoing, GLS is entitled to an injunction, pursuant to 18 U.S.C. § 1836(3)(A).

49. GLS is entitled to damages for actual loss and unjust enrichment caused by the misappropriation of the GLS Trade Secrets, pursuant to 18 U.S.C. § 1836(B).

50. GLS is entitled to exemplary damages for Norris's willful and malicious misappropriation of the GLS Trade Secrets, pursuant to 18 U.S.C. § 1836(C).

51. GLS is entitled to recovery of its attorney's fees, pursuant to 18 U.S.C. § 1836(D).

## COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS
## (WASH. REV. CODE CHAPTER 19.108)

52. GLS repeats each allegation in the preceding paragraphs as if set forth in full herein.

53. Norris's conduct, described above, constitutes a violation of the Washington Uniform Trade Secrets Act (Wash. Rev. Code Chapter 19.108).

54. In light of the foregoing, GLS is entitled to an injunction pursuant to Wash. Rev. Code 19.108.020.

55. GLS is entitled to an award of its damages pursuant to Wash. Rev. Code 19.108.030(1).

56. GLS is entitled to an award of double its actual damages pursuant to Wash. Rev. Code 19.108.030(2).

57. GLS is entitled to an award of its attorney's fees pursuant to Wash. Rev. Code 19.108.040.

GLS is entitled to orders to preserve secrecy of its trade secrets pursuant to Wash. Rev. Code 19.108.050.

## COUNT FOUR: BREACH OF CONTRACT

58.  GLS repeats each allegation in the preceding paragraphs as if set forth in full herein.

59.  The Agreement is an enforceable contract between GLS and Norris.

60.  The Agreement contained a restrictive covenant whereby Norris agreed not to compete with GLS during the term of the Agreement and continuing for a period of three years thereafter.

61.  The restrictive covenant is enforceable because it is necessary to protect GLS's legitimate business interests, was of a reasonable time period, and was supported by adequate consideration. Specifically, to hire and train sales agents who could effectively sell the GLS Methods to clients, GLS had to, not only provide them with highly confidential materials, but also train them extensively in the underlying theories, methodologies, and strategies. Without a restrictive covenant along the lines of that contained in the Agreement, GLS would not be able to protect itself against the staff turnover that is typical in the sales industry.

62.  Under the Agreement, Norris agreed to "return to [GLS] any property, documentation, records, or Confidential Information which is the property of" GLS "[u]pon the expiry or termination of this Agreement."

63.  Under the Agreement, Norris agreed "not disclose, divulge, reveal, report or use, for any purpose, any Confidential Information which [Norris] has obtained, except as authorized by [GLS] or as required by law."

64.  Norris's conduct, as described above, was in violation of his obligations under the Agreement.

65.   As a direct and proximate result of Norris's conduct, GLS suffered damages in an amount to be determined at trial.

66.   As a direct and proximate result of Norris's conduct, GLS has suffered, and continues to suffer, irreparable harm that cannot be fully redressed through damages alone.

67.   GLS has no adequate remedy at law.

68.   On or about October 22, 2017, GLS contacted Norris in a good faith effort to resolve their dispute by friendly consultation, as provided for in the Agreement. Norris failed to respond.

69.   In light of the foregoing, GLS is entitled to an order permanently and preliminarily enforcing the Restrictive Covenant, and an award of monetary damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, GLS respectfully requests that the Court:

(1) Enter judgment for GLS on all counts;

(2) Permanently and preliminarily enjoin Norris from:

   a. Using, communicating, disclosing, converting, appropriating, retaining, selling, transferring or copying any of the Copyrighted Materials;

   b. Using, communicating, disclosing, converting, appropriating, retaining, selling, transferring or copying any of the GLS Trade Secrets;

   c. Selling and offering for sale the GLS Methods; and

   d. Directly competing with GLS for a period of three years following termination of the Agreement;

(3) Award GLS its actual damages, together with pre- and post-judgment interest, in an amount to be determined at trial, but believe to be no less than $100,000;

(4) Award GLS punitive damages and reasonable attorney's fees and costs; and

(5) Award such other and further relief as this Court deems just and proper.

Dated: November 27, 2017

        GULKO SCHWED LLP

By: */s/ David J. Fryman*
    David J. Fryman (*pro hac vice application pending*)
    44 Wall Street, Second Floor
    New York, NY 10005
    T: 212-500-1312
    F: 212-678-0405
    david@gulkoschwed.com

        BUNDY LAW FIRM PLLC

By: */s/ Howard E. Bundy*
    Howard E. Bundy
    5400 Carillon Point
    Kirkland WA 98033

    T: 425-822-7888
    F: 425-307-6224
    bundy@bundylawfirm.com

    *Attorneys for Plaintiff*